UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE COE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 16-cv-01447-L-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

Pending before the Court are Defendants' Motions to Dismiss Plaintiff's complaint for failure to state a claim. One motion was filed by the City of San Diego ("City"), and a nearly identical motion was filed by the individually named Defendants. Plaintiff opposed the motions, and Defendants replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendants' motions are granted in part and denied in part.

**I.　BACKGROUND**

Plaintiff Suzanne Coe ("Coe") operates an adult entertainment business under the name of Red Eyed Jacks Sports Bar, Inc. dba Cheetah's ("Cheetah's") under a permit

issued by the City pursuant to the San Diego Municipal Code ("SDMC").[1]  This action arises from the City's revocation of Coe's permit.

In San Diego, a police permit is required to operate an adult entertainment establishment.  SDMC § 33.3603.  Section 33.0103 confers authority on police officers to inspect adult entertainment establishments.  As discussed in more detail in the orders issued in the related cases, *Doe v. City of San Diego et al.,* S.D. Cal. case no. 14cv1941-L(AGS) (doc. no. 35), and *Tanya A. et al. v. City of San Diego et al.,* S.D. Cal. case no. 14cv1942-L(AGS) (doc. no. 23), based on § 33.0103, on March 6, 2014, armed police officers wearing bullet proof vests raided Cheetahs.  Several officers involved in the raid are Defendants in this action, namely Sergeant Kevin Moyna ("Moyna"), Officer Perry McCiver ("McCiver"), Lieutenant Dan Plein ("Plein"), and Captain Chuck Kaye ("Kaye").  The other named Defendant is Shelly Zimmerman ("Zimmerman"), the San Diego Chief of Police.

During the raid, armed officers were posted at the doors to prevent the entertainers from leaving.  At least one entertainer was performing on stage when the raid commenced, and was ordered to stop.  The entertainers were ordered into dressing rooms.  The officers photographed each entertainer in a nearly nude state claiming they had to document their tattoos.  They threatened to arrest the entertainers who objected to detention or photographs.  At least one fully dressed entertainer was ordered to change

---

[1]   As a general rule, the Court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting it to a motion for summary judgment.  *United States v. Corinthian Colleges,* 655 F.3d 984, 998 (9th Cir. 2011); *see also* Fed. R. Civ. Proc. 12(d).  However, the Court may consider materials referenced in the complaint "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *Corinthian Colleges,* 655 F.3d at 999.  Pursuant to Federal Rule of Evidence 201, the Court "may also take judicial notice of 'matters of public record,' but not of facts that may be 'subject to reasonable dispute.'"  *Id.*  Accordingly, the Court takes judicial notice of the SDMC and its pertinent provisions.

back into her undergarments for semi-nude photographs.  This detention lasted approximately two hours.

On March 8, 2014, and on several days over the following weeks, multiple entertainers and the manager of Cheetahs complained to the press that the officers had violated their constitutional rights during the raid.  On March 24, 2014, nearly thirty entertainers filed a claim for damages for unlawful search and seizure, which the City ultimately rejected. On April 7, 2014, at Coe's direction, Cheetahs filed an action in this Court alleging violations of the First and Fourth Amendment rights of the United States Constitution, among other things.  (*Red Eyed Jacks Sports Bar Inc. dba Cheetah's Nightclub v. City of San Diego et al.*, S.D. Cal. case no. 14cv823-L(AGS).)

Two days later, on April 9, 2014, McCiver sent Coe a letter alleging three regulatory violations from February 12, 2014.[2]  On April 23, 2014, Coe and her counsel met with McCiver, Moyna, Plein, and Deputy City Attorney Paige Folkman.  The officers made suggestions how Coe could remedy the alleged violations, which all parties agreed would take "some time."  (Compl. ¶ 15.)  Nevertheless, the police commenced undercover operations at Cheetahs the next day, April 24, 2014, as well as on May 2 and May 20, 2014.  McCiver and Moyna also performed an inspection on May 7, 2017.  In all four instances, the police officers filed internal reports alleging more regulatory violations.

On June 9, 2014, McCiver sent Coe a Notice of Revocation of Nude Entertainment Business Permit, based on twelve alleged violations that occurred since the meeting on April 23.  At a meeting with Coe approximately one year earlier, on May 2, 2013, Moyna informed Coe that the next disciplinary step for regulatory violations would be a 15-day suspension of her permit.  After the revocation, Moyna stated that the decision to change the disciplinary action from suspension to revocation was based on "the totality of the

---

[2]   Although the letter was postmarked on April 9, 2014, it was dated April 2, 2014. (Compl. ¶14.)

circumstances."  At the time the revocation decision was made, the City was aware of the claims by the entertainers and Cheetahs.

Under SDMC § 33.0403, any permit holder is "subject to regulatory action by the Chief of Police against his or her police permit" if he or she "[v]iolates or allows the violation of any section of this Article" or "[f]ails to take corrective action after timely written notice of an observed violation." SDMC § 33.0403(a)(1), (4).  Regulatory action includes issuance of verbal or written warnings or notice of violation, placing conditions on the permit, suspension, or revocation.  *See id.* § 33.0403(b).  The "Chief of Police may take regulatory action consistent with the severity of the violation, or the frequency of violations." *Id.* § 33.0403(d).  Whenever regulatory action is taken against a police permit in the form of conditioning, suspending, or revoking the permit, the "Chief of Police shall send a notice to the permittee identifying the Code section(s) violated, describing the circumstances of the violation, and explaining the consequences of a failure to correct the violation, if appropriate." *Id.* § 33.0404(a).  However, once a permit has been revoked, it cannot be renewed, and any future new application may be denied. *Id*. §§33.0305, 33.0308.

Coe appealed the permit revocation.  The revocation was affirmed in an administrative hearing, and on petition for writ of mandamus to the San Diego County Superior Court.  Her appeal is pending at the California Court of Appeal.

On June 10, 2016, Coe filed the instant action alleging violation of 42 U.S.C. 1983 based on four claims:  (1) retaliation for exercise of her First Amendment rights; (2) violation of her equal protection rights; (3) ratification of unconstitutional action by official with final policymaking authority; and (4) supervisor liability for acts of subordinates.  She requests damages and an injunction preventing the City from taking adverse action against the permit.  Defendants moved to dismiss under Rule 12(b)(6), arguing Coe lacks standing to assert retaliation, and insufficient factual allegations in support of the remaining three claims.

## II. DISCUSSION

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). Even if doubtful in fact, factual allegations are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted). On the other hand, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Generally, the Court does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, the allegations "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

### A. Retaliation

Coe claims Defendants retaliated against her for exercising her First Amendment rights by revoking her adult entertainment business permit. Defendants counter she lacks Article III standing to assert this claim because she did not engage in any constitutionally protected activity.

Article III "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *[her]* invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks and citation omitted, emphasis in original). A plaintiff must show he or she has suffered an injury in fact, the injury is fairly traceable to the challenged action of the defendant, and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011).

Because the existence of federal standing "often turns on the nature and source of the claim asserted," the Court's standing analysis must focus on the nature and source of the plaintiff's claim: retaliation for exercise of First Amendment rights. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)). At the same time, however, "the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of [her] claim. Rather, the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya,* 658 F.3d at 1068.

Plaintiff alleges that she "operated" Cheetahs, owned the permit for its operation, and "directed" Cheetahs to file a complaint against the City. (Compl. ¶¶1, 13, 33, 35.) Defendants sent a letter to Coe, presumably as Cheetahs' operator, and met with her. (*Id*. ¶¶ 14, 15.) They noted her "attitude" at the meeting, and revoked her license based on the "totality of the circumstances," which reasonably could include more than the regulatory violations Defendants claim to have discovered at Cheetahs after the meeting. (*Id*. ¶¶ 34, 19.) Coe claims that the permit revocation chills and deters her exercise of First Amendment rights, including petitioning the court for redress, has deprived her of her right to free speech and of the property right in the permit. (*Id*. ¶¶37, 39.) Once a permit is revoked, it cannot be renewed, and any future permit application may be denied. SDMC §§33.0305, 33.0308. Coe seeks damages and injunctive relief precluding the City from taking adverse action against her permit. (Compl. at 10.) These allegations are sufficient to show that Coe has sufficient personal stake in the outcome of the case to meet Article III standing requirements.

Defendants next focus their argument on the contention that Coe did not exercise any First Amendment rights of her own but only on behalf of Cheetahs. This argument is not based on Article III, but concerns the prudential doctrine of shareholder standing. *See Clark v. City of Lakewood*, 259 F.3d 996, 1010 (9th Cir. 2001).

> In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares. Injury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements. [¶] A shareholder does have standing, however, when he or she has been injured directly and independently from the corporation. The same conduct may result in injury to both the corporation and the individual shareholders.

*RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1057 (9th Cir. 2002) (internal quotation marks, brackets, ellipses and citations omitted). Coe alleged, among other things, that the permit revocation was based at least in part on Cheetahs lawsuit, filed at her direction, which Defendants knew, and her "attitude" at the meeting with Defendants.

1    In addition, she alleged she owned the permit and that the revocation impacted her
2    property rights, including her ability to renew the permit or have it issued again, and has
3    chilled her exercise of First Amendment rights.  These allegations are sufficient to show
4    that Coe is seeking redress for injuries she suffered independently of Cheetahs.
5         The City asserts, without factual support, that Cheetahs, and not Coe, owned the
6    permit.  Drawing all reasonable inferences in Coe's favor, as the Court must on a Rule
7    12(b)(6) motion, *Huynh*, 465 F.3d at 999 n.3, Coe alleged she owned the permit. (Compl.
8    ¶¶1, 33.)  The Municipal Code requires every "person" who operates an adult
9    entertainment business to obtain a permit.  SDMC §33.3603.  Although a "person" can be
10   a business entity, it can also be an individual such as Coe.  *Id*.  Div. 2, Sect. 10 &
11   §11.0210 (""Person" means any natural person, firm, joint venture, joint stock company,
12   . . . or the manager, lessee, agent, servant, officer or employee of any of them or any
13   other entity which is recognized by law as the subject of rights or duties.").  To the extent
14   the City disagrees with Coe's allegations regarding ownership, the issue is a matter of
15   factual dispute, which is not ripe for resolution at the pleading stage.
16        Finally, the City suggests that Coe is not the real party in interest under Rule
17   17(a)(1) of the Federal Rules of Civil Procedure.  The rule "allows a federal court to
18   entertain a suit at the instance of any party to whom the relevant substantive law grants a
19   cause of action."  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986).
20   A party is real party interest if it can maintain the action under applicable substantive law.
21   To maintain a claim for retaliation, a plaintiff must allege that: (1) she was engaged in a
22   constitutionally protected activity; (2) the defendant's retaliatory action caused the
23   plaintiff to suffer an injury that would likely deter a person of ordinary firmness from
24   engaging in that protected activity; and (3) the retaliatory action was motivated, at least in
25   part, by the plaintiff's protected activity.  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192
26   F.3d 1283, 1300–01 (9th Cir. 1999).  For the reasons discussed in the context of Article

III and shareholder standing, Coe has alleged sufficient facts to maintain the retaliation claim as the real party in interest.[3]

### B.  Equal Protection

In her second cause of action, Plaintiff contends that she was denied equal protection under the Fourteenth Amendment when her permit was revoked, because no other adult entertainment business permit holder in San Diego has had their permit revoked for regulatory violations.  She also claims that the revocation was discriminatory, arbitrary and capricious.  (Compl. ¶42-44.)  To state a claim on a "class of one" theory asserted in the complaint, Coe must allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, "[s]elective enforcement of valid laws, without more, does not make the defendants' action irrational" or "arbitrar[y] and capricious[]" for purposes of equal protection, even in "class of one" cases. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995); *see also Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 603 (2008).

Defendants point to two permit revocation cases in San Diego in an attempt to show that Coe has not been singled out. *See Mcclelland v. City of San Diego*, case no. D059392, 2012 WL 1205122 (Cal. Ct. App. Apr. 11, 2012); *Krontz v. City of San Diego*, 136 Cal. App. 4th 1126 (2006).  These cases are not persuasive.  *Mclelland* involved a permit holder who flagrantly and repeatedly flouted the prohibitions on operation of an adult entertainment establishment between the hours of 2:00AM and 6:00AM.  The present case differs not only in the type of violations at issue, but also in their nature: the

---

[3] Even if Defendants succeeded in showing that Coe is not a real party in interest, this would not constitute a sufficient ground for dismissal. *See* Fed. R. Civ. Proc. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest.").

plaintiff in *Mclelland* intentionally violated regulations, whereas that sort of brazen disobedience is not apparent on the face of Coe's complaint. *Krontz* is distinguishable because it involved a suspension rather than a revocation. Both cases occurred well outside the time period at issue here, respectively two and six years before the events underlying the current action took place. Moyna testified that no other nude entertainment establishment permit holder has had their permit revoked for regulatory violations during the relevant time period. (Compl. ¶ 43.) This is sufficient to allege that Plaintiff was singled out for harsher treatment.

Furthermore, Coe alleged more than mere selective enforcement to show that the harsher treatment was intentional. At a previous meeting with McCiver and Moyna in 2013, Coe was told that the next disciplinary step for violations would be a 15-day permit suspension. Until the permit revocation notice in June 2014, no enforcement action was taken against Cheetahs. Moyna testified that he decided to issue a revocation rather than a suspension notice was the "totality of the circumstances." (Compl. ¶¶ 17-19.) The sudden and sharp increase in the undercover investigations and inspections at Cheetahs shortly after Cheetahs filed a lawsuit against the City, the comment about Coe's "attitude" at the 2014 meeting, and Moyna's vague explanation do not blunt the inference that Coe was intentionally singled out, and that there was no rational basis for the difference in the treatment between Cheetahs and other adult entertainment establishments.

Finally, Defendants argue that Coe's treatment was not irrational because the revocation was affirmed on administrative appeal and mandamus to State court. These decisions provide no explanation for the sharp difference in treatment among adult entertainment businesses for the same violations. Accordingly, they are insufficient to justify dismissal at the pleading stage.

### C.    Ratification

In the third cause of action, asserted only against the City and Zimmerman, Plaintiff alleges that the retaliatory revocation of her permit was deliberately approved or ratified by Zimmerman as the Police Chief and the official with the final policy making

authority at the San Diego Police Department. Defendants argue that the City is not a proper Defendant for this claim, and that insufficient facts were alleged to support the claim against Zimmerman.

To show ratification, a plaintiff must show "that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002). Defendants maintain that the claim can only be asserted against an individual and that it cannot be asserted against the City. Coe does not object. Accordingly, the ratification claim against the City is dismissed.

With respect to the claim against Zimmerman, Coe must allege "a conscious, affirmative choice." *See Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Ratification requires knowledge of the alleged violation and its approval. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("mere refusal to overrule a subordinate's completed act does not constitute approval").

Coe points to the Municipal Code §33.0403, which confers on the Chief of Police the authority to impose regulatory penalties, including permit revocation. She argues the Chief has final authority to revoke a permit, and that the decision to revoke her permit was therefore necessarily made by Zimmerman or her designee. Coe alleges Moyna obtained approval from Plein and Plein's supervisor, acting Assistant Chief Kaye. Moyna testified that Kaye would run the revocation decision "up through his chain of command." (Compl. at 2-3.) She alleges that "Zimmerman's decision to retaliate against Coe was a conscious and deliberate choice to follow a course of action among various alternatives." (*Id.* ¶49.) Coe maintains these allegations show that Zimmerman delegated and ratified the revocation decision.

Coe's allegations fail to show that Zimmerman had sufficient knowledge to ratify the revocation. Alternatively, final policymaking authority may be delegated to an official "where the official's discretionary decision is not constrained by policies not of that official's making and not subject to review by the municipality's authorized

policymakers." *Ulrich*, 308 F.3d at 986 (internal quotation marks, brackets, ellipses and citations omitted). Coe's allegations are insufficient to determine whether Zimmerman delegated the revocation to Moyna or Kaye. Defendants' motion is therefore granted as to the ratification claim.

The Court must next consider whether Coe should receive leave to amend. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 2004). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks and citation omitted). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *Id.* Because it appears that Coe may be able to amend the complaint to allege ratification, the claim is dismissed with leave to amend.

### D. Supervisory Liability

In her final cause of action Coe alleges that Plein, Kaye and Zimmerman knew or should have known of Moyna and McCiver's violation of Coe's constitutional rights, and approved it or failed to prevent it. (Compl. ¶¶ 52-54.) Defendants maintain that Coe did not provide sufficient factual allegations of each Defendant's involvement in causing the violation of her rights.

A supervisor may be held liable only if (1) he or she personally participated in the violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir.

2012), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). However, a supervisor cannot be held liable based merely on knowledge and acquiescence in the subordinates' violations. *Iqbal*, 556 U.S. at 677.  To establish supervisor liability under § 1983 after *Iqbal*, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "Even under a 'deliberate indifference' theory of individual liability, [a plaintiff] must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).  Bald and conclusory allegations are insufficient. *Id.*

Coe offers no more than bald and conclusory allegations of Defendants' knowledge and acquiescence without plausibly establishing knowledge.  Defendants' motion to dismiss the fourth cause of action is therefore granted.  Because Plaintiffs may be able to provide sufficient factual allegations, they are granted leave to amend.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motions are denied with respect to the claims for retaliation and equal protection violations.  They are granted as to the claims for ratification and supervisory liability.  Plaintiff is granted leave to amend.  Should Plaintiff choose to amend, she must file and serve the amended complaint, if any, no later than **April 14, 2017**.  Defendants shall file and serve their response, if any, no later than the time provided in Federal Rule of Civil Procedure 15(a)(3).

**IT IS SO ORDERED.**

Dated: March 31, 2017

_____
Hon. M. James Lorenz
United States District Judge